# SUMMONS

In the Marion Superior Court, Room No. _____

PRECISION RINGS, INC.,  )
                        )
            PLAINTIFF   )   Cause No. 49D12 15 11 PL 037874
    -VS-                )
                        )
WRIGHTSPEED, INC.,      )
                        )
            DEFENDANT.  )

To Defendant: (Name) **Wrightspeed, Inc.**

(Address) **c/o Ian Wright, its Registered Agent**

**2540 Junction Avenue**

**San Jose, CA 95134**

You are hereby notified that you have been sued by the person named as plaintiff and in the Court indicated above.

The nature of the suit against you is stated in the complaint, which is attached to this Summons. It also states the relief sought or the demand made against you by the plaintiff.

An answer or other appropriate response in writing to the complaint must be filed either by you or your attorney within twenty (20) days, commencing the day after you receive this Summons, (or twenty-three (23) days if this Summons was received by mail), or a judgment by default may be rendered against you for the relief demanded by the plaintiff.

If you have a claim for relief against the plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

*Myla A. Eldridge*
CLERK OF THE MARION CIRCUIT COURT

Dated _____                        _____ (Seal)
                                                    NOV 13 2015
                                                    CLERK, MARION SUPERIOR COURT

(The following manner of service of summons is hereby designated.)

__X__ Registered or certified mail.

_____ Service at place of employment, to-wit:

_____ Service on individual – (Personal or copy) at above address.

__X__ Service on agent. (Specify) _Service on registered agent_

_____ Other service. (Specify)

*Mark Alson*
George A. Gasper (#24466-41)
Mark R. Alson (#27724-64)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200
(317) 236-2100
Attorneys for Plaintiff

**EXHIBIT 1**

## SHERIFF'S RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served this summons on the _____ day of _____ 20___:

(1) By delivering a copy of the Summons and a copy of the complaint to the defendant, _____ .

(2) By leaving a copy of the Summons and a copy of the complaint at _____

which is the dwelling place or usual place of abode of _____

and by mailing a copy of said summons to said defendant at the above address.

(3) Other Service or Remarks: _____

_____


_____                _____
SHERIFF'S COST                                                       SHERIFF

                                               By: _____
                                                               DEPUTY

### CLERK'S CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 20___, I mailed a copy of this Summons and a copy of the complaint to the defendant, _____, by _____ mail, requesting a return receipt, at the address furnished by the plaintiff.


                                               _____
                                               CLERK, MARION SUPERIOR COURT

Dated _____                       By: _____
                                                               DEPUTY

### RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____ was accepted by the defendant on the _____ day of _____, 20____.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint was returned not accepted on the _____ day of _____, 20___.

I hereby certify that the attached return receipt was received by me showing that the Summons and a copy of the complaint mailed to defendant _____ was accepted by _____ on behalf of said defendant on the _____ day of _____, 20____.


                                               _____
                                               CLERK, MARION SUPERIOR COURT

Dated _____                       By: _____
                                                               DEPUTY

STATE OF INDIANA ) IN THE MARION COUNTY SUPERIOR COURT
)SS: **49D12 15 11 PL 037874**
COUNTY OF MARION ) CAUSE NO.

PRECISION RINGS, INC.,

    Plaintiff,

v.

WRIGHTSPEED, INC.,

    Defendant.

**FILED**
(182) NOV 1 3 2015
Myla A. Eldridge
CLERK OF THE MARION CIRCUIT COURT

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES

Plaintiff, Precision Rings, Inc. ("Precision Rings"), by counsel, for its Verified Complaint for Injunctive Relief, Declaratory Judgment and Damages against Defendant, Wrightspeed, Inc. ("Wrightspeed"), states as follows:

1. Precision Rings is an Indiana corporation with its principal place of business located in Marion County, Indiana.

2. Wrightspeed is a Delaware corporation, with its principal place of business located at 2540 Junction Ave, San Jose, California 95134.

3. Jurisdiction is proper in Indiana because, among other things, Wrightspeed entered into a contract with an Indiana company for services to occur in Indiana and the harm from Wrightspeed's wrongful acts has occurred and/or will occur in Indiana. Indiana law also governs this dispute pursuant to the contract. Venue is proper here for these same reasons and further because Precision Rings' principal office is located in Marion County.

### GENERAL ALLEGATIONS

4. Precision Rings is a designer and custom manufacturer of piston rings and seal rings for a variety of industries, including the aerospace, aircraft, industrial, nuclear, power

generation, and steam turbine industries. Precision Rings offers engineering as a service, whereby it designs products for a customer only if such customer intends for Precision Rings to manufacture the products as well.

5. For a potential business partner to take Precision Rings' designs and provide them to a competitor for manufacture strikes at the very essence of Precision Rings' business model. Therefore, Precision Rings invests considerable time money and resources into the development of its confidential and trade secret information. Its proprietary information is among Precision Rings' most valuable business assets.

6. Wrightspeed is a company in the powertrain industry.

7. In or around October 2014, Precision Rings and Wrightspeed sought to engage in a business transaction, whereby Precision Rings would design and manufacture custom seal rings for Wrightspeed.

8. To facilitate the evaluation of the possible business relationship, Precision Rings and Wrightspeed entered into a Nondisclosure Agreement ("Agreement") on or about January 11, 2015. A true and accurate copy of the Agreement is attached hereto as <u>Exhibit A</u>.

9. Pursuant to the Agreement, Wrightspeed agreed that it would not use or disclose any of Precision Rings' Confidential Information and Trade Secrets, which are defined to include:

> [A]ll trade secrets and other confidential or proprietary information in any form disclosed or otherwise made available (including without limitation orally, electronically, through observation, in writing, or any other tangible or intangible form) in connection with the Agreed Purposes whether or not identified in writing as confidential information of the disclosing party. Confidential Information shall include, but not be limited to, Trade Secrets (defined below), discoveries, ideas, concepts, designs, methods, drawings, specifications, diagrams, business activities and operations, intellectual property, customer lists, pricing information and other technical and business information. Both parties agree that any

2

disclosure of Confidential Information shall be subject to the terms and conditions of this Agreement. Notwithstanding the foregoing, information and data disclosed or made available shall not be deemed to be Confidential Information, and the receiving party shall have no obligation to treat such information and data as confidential, if such information and data (i) were known independently by the receiving party at the time of such disclosure as demonstrated by pre-existing documentation; (ii) were known to the public at the time of such disclosure; (iii) become known to the public (other than by an act of the receiving party or its personnel, subcontractors, or agents) after disclosure; (iv) are approved for disclosure in writing by the disclosing party; or (v) are required by law to be disclosed by the receiving party, provided that prior written notice of such required disclosure is given to the disclosing party and the receiving party cooperates with the disclosing party in resisting such requirement(s). Specific Confidential Information shall not be deemed to be within the exceptions (i) through (v) above merely because it is embraced by more general information within such exceptions, nor shall a combination of items of Confidential Information be deemed to be within such an exception where one or more individual items are not within such exception. "Trade Secrets" as used herein shall have the meaning as defined under the Indiana Trade Secrets Act, Ind. Code § 24-2-3-2, and shall include without limitation Precision's drawings, designs, materials of construction, manufacturing information, routing sheets, and bills of materials. Company acknowledges and agrees that Precision's Trade Secrets are not generally known to the public or to Precision's competitors, were developed or compiled at significant expense by Company, are the subject of Company's reasonable efforts to maintain their secrecy, and that Company derives significant independent economic value by keeping its Trade Secrets secret. The provisions of this Agreement are intended to supplement, not to supplant, the Trade Secret laws of the State of Indiana.

Agreement, ¶ 1.

10. The Agreement further states:

2. <u>Nondisclosure</u>. Commencing on the date hereof and continuing until such time as the relevant information is no longer confidential, Precision and Company shall not disclose directly or indirectly, in whole or in part, to any third person, firm, corporation or other entity, any Confidential Information received from the disclosing party, except that such information may be disclosed by a party to that party's employees and those third parties (who have been pre-approved in writing by the other party in each case) with whom that party has contracted, provided that such disclosure is confined to those individuals who work directly in connection with the Agreed Purposes, the information is disclosed on a "need-to-know" basis, and such individuals and third parties are advised

of and agree in advance to abide by the terms and conditions of this Agreement Each party will be responsible for compliance as to the terms of this Agreement regarding any individual to whom any Confidential Information has been disclosed. Each party shall keep in confidence all Confidential Information, and shall not: (i) except as expressly permitted hereunder to further the Agreed Purpose directly or indirectly disclose the Confidential Information to any third party, (ii) use the Confidential Information for its own or a third party's benefit, or (iii) otherwise exploit the Confidential Information for any purpose other than the Agreed Purposes. Company and Precision shall use at least the same degree of care in safeguarding the Confidential Information as each party uses for its own confidential and proprietary information.

3. <u>Ownership</u>. All Confidential Information shall be and remain the property of the disclosing party. Provided however, that Precision shall own any drawings, designs, schematics, and other work product (collectively, "Work Product") created by or at the direction of Precision in the context of the Agreed Purposes, notwithstanding the fact that such Work Product may have been created at the request of the other party. Company further acknowledges that such Work Product constitutes unique and valuable trade secrets to Precision and shall be considered Confidential Information of Precision hereunder.

4. <u>Return of Confidential Information</u>. The disclosing party may at any time, by delivering a written notice to the Company: (i) demand the return of all copies of the Confidential Information or other materials incorporating Confidential Information in the possession of the Company or its employees, or (ii) instruct the Company to destroy all such copies.

Agreement, ¶¶ 2-4.

11. Finally, with regard to remedies, the Agreement states:

Each party hereby acknowledges and agrees that in the event of any violation hereof by the other party, the non-violating party shall be authorized and entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as well as an equitable accounting of all profits and benefits arising out of a violation of any of the covenants hereunder, which rights and remedies shall be cumulative and shall be in addition to any and all other rights and remedies to which such party may be entitled without the requirement of posting a bond therefore. In any action filed by one party against the other alleging a violation or threatened violation hereof, the prevailing party as finally determined by any court of competent jurisdiction shall be entitled to recover its reasonable attorney's fees.

Agreement, ¶ 5.

4

12. Precision Rings provided Confidential Information (including design information and part engineering drawings) to Wrightspeed, but only after it received Wrightspeed's assurances contained in the Agreement.

13. Specifically, Precision Rings provided part drawings for PR 442502, PR 442503, and PR 442477 to Wrightspeed. All of these part drawings were transmitted to Chris Douglas, a purchaser at Wrightspeed, on January 13, 2015.

14. Subsequently, the proposed business transaction between Precision Rings and Wrightspeed was not consummated. Wrightspeed elected to engage a competitor of Precision Rings as its supplier. Nonetheless, Wrightspeed continues to be bound by the provisions of the Agreement.

15. After the business deal fell apart, Precision Rings learned that Wrightspeed sent marked-up engineering drawings, or designs derived from those drawings that appear to reference Precision Rings part numbers, to at least one of Precision Rings' competitors.

16. Wrightspeed's actions violated the Agreement.

17. Precision Rings sought assurances from Wrightspeed to attempt to confirm that Wrightspeed had mitigated the harm done to Precision Rings due to Wrightspeed's improper use and disclosure of the Confidential Information. Wrightspeed refused to provide the necessary confirmation.

18. The matter escalated, and counsel for Precision Rings sent a letter to Wrightspeed on October 20, 2015, notifying Wrightspeed of the breach of the Agreement, seeking additional information regarding the extent of the improper disclosure, and reminding Wrightspeed of its obligation to preserve all potential evidence. A true and accurate copy of the October 20, 2015 letter is attached hereto as Exhibit B.

19. Initially, Wrightspeed, through its CEO Ian Wright, denied that Precision Rings had even sent to Wrightspeed any design information or part engineering drawings.

20. After Precision Rings directed Wrightspeed to the January 13, 2015 email as just one example of the Precision Rings' transmittal of Confidential Information, Wrightspeed admitted that it had received the email and its attached part drawings.

21. Instead of providing information regarding the extent of the disclosure, as requested by the October 20, 2015 letter, Wrightspeed claimed to have deleted the drawings.

22. Wrightspeed has, however, refused to admit that it has violated the Agreement or to provide additional details about disclosure such that Precision Rings can take all necessary action to secure its data and secure Wrightspeed's compliance with the Agreement.

23. If Wrightspeed is permitted to continue to violate the Agreement, Precision Rings will continue to suffer further irreparable harm as a result of the use of Precision Rings' confidential and proprietary information, and it will experience a threat to its business vitality and viability.

## COUNT I
## DECLARATORY JUDGMENT

24. Precision Rings incorporates paragraphs 1 through 23 as though restated herein.

25. The facts and circumstances of this case present a case of actual controversy regarding the rights and legal relations of the parties hereto.

26. A present adjudication of these controversies is necessary to guide the parties' future conduct and to preserve the parties' legal rights.

27. Precision Rings is a person interested under a written contract within the definition of Ind. Code. § 34-14-1-2, and is entitled pursuant to Ind. Code § 34-14-1-1 and § 34-

14-1-3 to a declaration that Wrightspeed has breached its contractual obligations, specifically its confidentiality and non-disclosure obligations.

## COUNT II
## INJUNCTIVE RELIEF

28. Precision Rings incorporate paragraphs 1 through 27 as though restated herein.

29. Wrightspeed has violated its non-disclosure obligations through the conduct described above.

30. Wrightspeed's actions constitute a violation and breach of the Agreement.

31. Wrightspeed has refused to provide adequate assurances to Precision Rings that it will stop violating the Agreement and/or that all prior violations have been remedied.

32. There is a substantial likelihood that Precision Rings will succeed on the merits of its claims against Wrightspeed.

33. Precision Rings will suffer immediate and irreparable harm in the absence of a preliminary injunction that enjoins Wrightspeed from violating the Agreement and/or benefitting from prior violations.

34. The balance of hardships and the public interest favor issuing a preliminary injunction in this case, particularly the ability of a company to maintain control and proprietary rights over its most confidential information.

35. Precision Rings is entitled to injunctive relief through an order of specific performance.

36. Precision Rings seeks judgment as hereinafter set forth.

## COUNT III
## BREACH OF CONTRACT

37. Precision Rings incorporates paragraphs 1 through 36 as though stated fully herein.

38. Wrightspeed agreed to the terms of the Agreement, an enforceable contract.

39. Wrightspeed's actions constitute a breach of the Agreement.

40. Precision Rings has further been damaged by Wrightspeed's conduct.

41. In addition, under the Agreement, Precision Rings is entitled to its attorneys' fees and costs incurred in enforcing the Agreement as a result of Wrightspeed's violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Precision Rings requests a judgment against Wrightspeed as follows:

(1) Declaratory relief that Wrightspeed is in violation of the Agreement, and that such provisions are enforceable;

(2) An order restraining and/or enjoining Wrightspeed from violating its obligations pursuant to the Agreement and further compelling Wrightspeed to take all necessary actions to stop any harm caused by its prior breaches;

(3) An order awarding Precision Rings its damages, together with its costs and attorneys' fees incurred in enforcing the Agreement; and

(4) Any award, including damages, that this Court deems just and appropriate (including any Order necessary to address Wrightspeed's breaches of the Agreement).

## **VERIFICATION**

I, Lee Crannell, am the President of Precision Rings, Inc. I declare that I am authorized, pursuant to applicable law and rules, to verify the foregoing Verified Complaint on behalf of Precision Rings, Inc. and that the factual allegations made in the foregoing Verified Complaint are true and accurate to the best of my information and belief.

*[signature]* PRESIDENT
PRECISION RINGS INC

Respectfully submitted,

ICE MILLER LLP

*Mark Alson*

George A. Gasper (#24466-41)
Mark R. Alson (#27724-64)

*Counsel for Plaintiff, Precision Rings, Inc.*

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2100
george.gasper@icemiller.com
mark.alson@icemiller.com

10

## NONDISCLOSURE AGREEMENT

THIS NONDISCLOSURE AGREEMENT (the "Agreement") is made this ____11th____ day of ____January____, 20_15_ by and between Precision Rings, Inc., an Indiana corporation ("Precision") and the undersigned party ("Company"). For purposes of this Agreement, the terms "Precision" and "Company" shall include each of their respective past and present officers, directors, trustees, employees, agents, affiliated entities, groups, divisions, and individuals with whom each has contracted regarding the "Agreed Purposes" as defined below.

### WITNESSETH:

WHEREAS, each party desires to disclose and to have access to certain "Confidential Information" (as defined below) in connection with the evaluation of a possible business relationship between the parties and, to the extent the parties do business together, in connection with the parties' business relationship (the "Agreed Purposes"); and

WHEREAS, Precision is the owner of certain Confidential Information which may be disclosed to Company in connection with the Agreed Purposes, and whereas, Company may also disclose Confidential Information to Precision.

NOW, THEREFORE, the parties hereto agree as follows:

1. <u>Confidential Information & Trade Secrets</u>. For purposes of this Agreement "Confidential Information" shall mean all trade secrets and other confidential or proprietary information in any form disclosed or otherwise made available (including without limitation orally, electronically, through observation, in writing, or any other tangible or intangible form) in connection with the Agreed Purposes whether or not identified in writing as confidential information of the disclosing party. Confidential Information shall include, but not be limited to, Trade Secrets (defined below), discoveries, ideas, concepts, designs, methods, drawings, specifications, diagrams, business activities and operations, intellectual property, customer lists, pricing information and other technical and business information. Both parties agree that any disclosure of Confidential Information shall be subject to the terms and conditions of this Agreement. Notwithstanding the foregoing, information and data disclosed or made available shall not be deemed to be Confidential Information, and the receiving party shall have no obligation to treat such information and data as confidential, if such information and data (i) were known independently by the receiving party at the time of such disclosure as demonstrated by pre-existing documentation; (ii) were known to the public at the time of such disclosure; (iii) become known to the public (other than by an act of the receiving party or its personnel, subcontractors, or agents) after disclosure; (iv) are approved for disclosure in writing by the disclosing party; or (v) are required by law to be disclosed by the receiving party, provided that prior written notice of such required disclosure is given to the disclosing party and the receiving party cooperates with the disclosing party in resisting such requirement(s). Specific Confidential Information shall not be deemed to be within the exceptions (i) through (v) above merely because it is embraced by more general information within such exceptions, nor shall a combination of items of Confidential Information be deemed to be within such an exception where one or more individual items are not within such exception. "Trade Secrets" as used herein shall have the meaning as defined under the Indiana Trade Secrets Act, Ind. Code § 24-2-3-2, and shall include without limitation Precision's drawings, designs, materials of construction, manufacturing information, routing sheets, and bills of materials. Company acknowledges and

1/3840317.1

**EXHIBIT A**

agrees that Precision's Trade Secrets are not generally known to the public or to Precision's competitors, were developed or compiled at significant expense by Company, are the subject of Company's reasonable efforts to maintain their secrecy, and that Company derives significant independent economic value by keeping its Trade Secrets secret. The provisions of this Agreement are intended to supplement, not to supplant, the Trade Secret laws of the State of Indiana.

2. <u>Nondisclosure</u>. Commencing on the date hereof and continuing until such time as the relevant information is no longer confidential, Precision and Company shall not disclose directly or indirectly, in whole or in part, to any third person, firm, corporation or other entity, any Confidential Information received from the disclosing party, except that such information may be disclosed by a party to that party's employees and those third parties (who have been pre-approved in writing by the other party in each case) with whom that party has contracted, provided that such disclosure is confined to those individuals who work directly in connection with the Agreed Purposes, the information is disclosed on a "need-to-know" basis, and such individuals and third parties are advised of and agree in advance to abide by the terms and conditions of this Agreement Each party will be responsible for compliance as to the terms of this Agreement regarding any individual to whom any Confidential Information has been disclosed. Each party shall keep in confidence all Confidential Information, and shall not: (i) except as expressly permitted hereunder to further the Agreed Purpose directly or indirectly disclose the Confidential Information to any third party, (ii) use the Confidential Information for its own or a third party's benefit, or (iii) otherwise exploit the Confidential Information for any purpose other than the Agreed Purposes. Company and Precision shall use at least the same degree of care in safeguarding the Confidential Information as each party uses for its own confidential and proprietary information.

3. <u>Ownership</u>. All Confidential Information shall be and remain the property of the disclosing party. Provided however, that Precision shall own any drawings, designs, schematics, and other work product (collectively, "Work Product") created by or at the direction of Precision in the context of the Agreed Purposes, notwithstanding the fact that such Work Product may have been created at the request of the other party. Company further acknowledges that such Work Product constitutes unique and valuable trade secrets to Precision and shall be considered Confidential Information of Precision hereunder.

4. <u>Return of Confidential Information</u>. The disclosing party may at any time, by delivering a written notice to the Company: (i) demand the return of all copies of the Confidential Information or other materials incorporating Confidential Information in the possession of the Company or its employees, or (ii) instruct the Company to destroy all such copies.

5. <u>Remedies</u>. Each party hereby acknowledges and agrees that in the event of any violation hereof by the other party, the non-violating party shall be authorized and entitled to obtain from any court of competent jurisdiction preliminary and permanent injunctive relief as well as an equitable accounting of all profits and benefits arising out of a violation of any of the covenants hereunder, which rights and remedies shall be cumulative and shall be in addition to any and all other rights and remedies to which such party may be entitled without the requirement of posting a bond therefore. In any action filed by one party against the other

alleging a violation or threatened violation hereof, the prevailing party as finally determined by any court of competent jurisdiction shall be entitled to recover its reasonable attorney's fees.

6. Relationship of the Parties. Nothing contained in this Agreement shall be construed to constitute either party hereto as the partner, agent or joint venturer of the other.

7. Survival of the Covenants. The terms of this Agreement, including without limitation all obligations and restrictions on use of Confidential Information, shall survive the termination of work with respect to any Agreed Purposes for which any Confidential Information is provided by one party to the other.

8. Amendments. This Agreement may not be modified or amended except in a writing signed by the parties hereto.

9. No Waiver. The failure of any party to require a performance by another party of any provision of this Agreement shall in no way affect the full right to require such a performance at any time thereafter.

10. Severability. If any provision of this Agreement is found invalid or unenforceable for any reason by a court of competent jurisdiction from which no appeal is, or can be, taken, then the remaining provisions of this Agreement will remain in force to the greatest extent possible to give effect to the intentions of the parties hereto at the time this Agreement was entered. Solely in the event a court of competent jurisdiction presiding over a dispute arising under this Agreement determines that the duration of the obligations set forth herein with respect to non-disclosure of certain Proprietary Information is unenforceable, the parties agree that such court may shall be permitted to modify the period of non-disclosure to the maximum period permitted; provided, however, that the non-disclosure period for Confidential Information qualifying as a trade secret shall endure until such time as the trade secret is no longer confidential.

11. Entire Agreement. This Agreement embodies the entire understanding between the parties respecting the subject matter of this Agreement and supersedes any and all prior or contemporaneous negotiations, correspondence, understandings and agreements between the parties respecting the subject matter of this Agreement.

12. Assignment and Binding Effect. Except in the instance wherein substantially all of a party's assets or ownership is transferred to a third party, neither party may assign this Agreement without the other party's prior written consent. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their representatives, successors and assigns.

13. Governing law. This Agreement shall be governed by and construed in accordance with the laws of the state of Indiana.

14. No warranties. Neither party makes any representation or warranty as to the accuracy or completeness of the Confidential Information it provides to the receiving party.

**IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first above written.**

1/3840317.1

PRECISION RINGS, INC.

By: _____

Title: PRESIDENT

COMPANY (Wrightspeed)

By: _____

Title: CEO


**LEGAL COUNSEL**

One American Square | Suite 2900 | Indianapolis, IN 46282-0200

October 20, 2015

Writer's Direct Number: (317) 236-2251
Direct Fax: (317) 592-4782
Email: Dustin.Dubois@icemiller.com

**VIA FEDERAL EXPRESS AND ELECTRONIC TRANSMITTAL**
ian.wright@wrightspeed.com / ian@wrightspeed.com

Mr. Ian Wright
CEO
Wrightspeed, Inc.
2540 Junction Avenue
San Jose, CA 95134

    *RE:*   *Precision Rings, Inc.*

Dear Mr. Wright:

    Ice Miller LLP represents Precision Rings, Inc. ("Precision"). It has been brought to our attention that Wrightspeed, Inc. ("Company") has received Proprietary Information (defined below) of Precision and may have disclosed this information, in whole or in part, with other companies in violation of:

    1.     The Nondisclosure Agreement by and between Precision and the Company dated January 11, 2015

    2.     Precision's trade secret rights

    3.     Precision's copyright rights (U.S. Copyright Registration No. VAu 1-175-140)

    Precision provided Company with design information, part engineering drawings, and other valuable confidential information ("Proprietary Information"). After learning that Company elected to use a different supplier, Precision obtained information from one of Company's employees, Ryan Sadler, that, in seeking bids from other suppliers, Company sent marked-up engineering drawings that reference a Precision part number. We are very concerned that Precision's engineering drawings themselves, or designs derived from the Precision designs and including Precision Proprietary Information, have been sent to Precision competitors. The Precision part that was referenced is the design for the ring Precision sold to Company, and this part is not a catalog item. Therefore, Precision reasonably infers that Company has provided Precision's Proprietary Information to other potential suppliers.

    Precision has sought assurances from Company in an effort to confirm that Company has mitigated, and will continue to mitigate, harm done to Precision through improper use and disclosure of Precision's Proprietary Information. Company has failed to provide satisfactory assurances. Please contact us, or have your counsel contact us, to provide us with the following information 1.) all third parties to whom design or part information was sent; 2.) copies of the

---

Ice Miller LLP | Chicago   Cleveland   Columbus   DuPage County, Ill.   Indianapolis   Washington, D.C. | **icemiller.com**

**EXHIBIT B**

Wrightspeed, Inc.
October 20, 2015
Page 2

Precision Proprietary Information sent to such third parties or, if no copy is available, a description thereof; and 3.) contact information of all personnel at such third parties to whom design or part information was sent. You can send this information to the attention of the undersigned at:

> Dustin DuBois, Esq.
> Ice Miller LLP
> One American Square, Suite 2900
> Indianapolis, IN 46282-0200

We look forward to receiving the information described above. If you have any questions, please contact me at (317) 236-2251.

To be clear, the only proper means by which Company could have purchased from another source rings that are the subject of Precision's Proprietary Information would have been to have alternate suppliers design a different version of the ring based only on the information of the Company, without providing any Precision Proprietary Information or derivative information.

Precision will continue to monitor the marketplace for evidence of any improper use of its Proprietary Information by Company, and to assure that Company does not incorporate any elements of the Precision ring design into any Company Products. We would like to take this opportunity to remind Company of the obligation to retain information (such as e-mails, letters, and files) that may constitute evidence in a future legal proceeding. While Precision has asked Company for the return or destruction of Precision's confidential information, this should not be construed as a request to destroy potential evidence – in fact, that information must be preserved by Company (with any and all appropriate safeguards to ensure that such information is not misused any further). Precision reserves all rights, including without limitation the right to bring an action against Company for misappropriation of trade secrets, breach of the Nondisclosure Agreement, and infringement of Precision's intellectual property rights, including its copyright

Very truly yours,

ICE MILLER LLP

*Dustin DuBois* (signature)

Dustin S. DuBois

DSD/eac
cc: Joseph L. Crannell
George Gasper, Esq.